# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Bradley D. Wolfe,**

    **Plaintiff,**

**v.**                                                           **Case No. 09-2615-JWL**

**Ford Motor Company,**

    **Defendant.**

## MEMORANDUM & ORDER

Plaintiff filed a pro se complaint against defendant asserting claims arising out of his employment with defendant including violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and a state law whistleblower claim. Defendant moved to dismiss all claims and the court, in a prior memorandum and order, granted in part and denied in part that motion. To the extent the motion was granted, the court permitted plaintiff an opportunity to file an amended complaint. Plaintiff has now filed an amended complaint and this matter is now before the court on defendant's motion to dismiss plaintiff's amended complaint in its entirety. As will be explained, the motion is denied with respect to plaintiff's dyslexia-related disability claim and is otherwise granted.[1]

---

[1] Plaintiff did not respond to the motion to dismiss by the April 2, 2010 deadline established by Magistrate Judge O'Hara. The court directed plaintiff, no later than May 24, 2010, to show good cause why he had not responded to the motion by the deadline. Indeed, at the time the court issued the order to show cause, plaintiff had still not filed a response to the motion to dismiss. In any event, the court cautioned plaintiff that if he did not show good cause on or before May 24, 2010 why he had not responded to defendant's motion, then the court would consider and decide defendant's motion as uncontested.

Defendant now urges the court to consider its motion as uncontested because,

*Disability Claims*

In its memorandum and order resolving defendant's prior motion to dismiss, the court liberally construed plaintiff's complaint as asserting ADA claims on the basis of both his dyslexia and his chronic knee pain. With respect to plaintiff's dyslexia-related ADA claims, the court granted defendant's motion to dismiss the claims on the grounds that plaintiff's complaint contained no allegations that defendant took any action as a result of plaintiff's dyslexia (or failed to accommodate plaintiff's dyslexia) that would rise to the level of a violation of the Americans with Disabilities Act. In short, the court noted that even a "liberal reading of plaintiff's complaint reveals no relationship between plaintiff's dyslexia and any of the events described in his complaint." In an abundance of caution, however, the court permitted plaintiff the opportunity to amend his complaint to flesh out the allegations concerning his dyslexia-related ADA claims.

In his amended complaint, plaintiff alleges that defendant routinely denied plaintiff's requests for FMLA leave on the grounds that plaintiff's FMLA forms were incomplete or inaccurate. Plaintiff alleges that his dyslexia prevented him from completing the paperwork to defendant's satisfaction and that he requested assistance or other accommodation with respect

---

according to defendant, plaintiff never explained to the court why he did not timely oppose defendant's motion (although he filed a substantive response to the motion by May 24, 2010). The court declines to consider the motion as uncontested. Although plaintiff did not file a separate pleading addressing the order to show cause, he did explain in his May 14, 2010 motion for appointment of counsel that he was not aware that he was required to file a response to the motion, that he was sorry for the oversight and that he would be providing a response by the May 24, 2010 deadline. Given plaintiff's pro se status, this response is sufficient to warrant resolution of defendant's motion on the merits.

2

to his FMLA paperwork in light of his dyslexia but that defendant refused to accommodate him. Plaintiff alleges that he lost income because he was forced to take leave without pay after defendant wrongfully denied him FMLA leave.

Defendant now moves to dismiss plaintiff's dyslexia-related ADA claims on the grounds that plaintiff has not alleged any actionable claim occurring after October 6, 2006–300 days prior to the filing of his August 7, 2007 charge of discrimination. The court disagrees. As even defendant recognizes, plaintiff allegedly requested and was denied assistance completing his FMLA paperwork during the 300-day window. Defendant, then, has simply not shown that it is entitled to dismissal of plaintiff's claim on this basis. Defendant further asserts summarily that an alleged refusal to provide assistance completing plaintiff's FMLA paperwork does not "suggest a violation of the ADA." Significantly, defendant makes no specific argument that plaintiff's allegations do not meet the pertinent pleading requirements and, in light of plaintiff's specific allegations that he sought and was denied an accommodation of his dyslexia and that he suffered damages as a result, the court will not dismiss the claim at this juncture. Defendant's motion is denied in this respect.

Defendant next moves to dismiss any knee-related ADA claim that could be construed in the amended complaint. According to defendant, plaintiff intends only to assert an ADA claim based on his dyslexia and, in any event, the references to plaintiff's knee condition found within the amended complaint do not state a claim under the ADA. By way of background, defendant made a similar argument in its motion to dismiss plaintiff's initial complaint. The court liberally construed that complaint to include a knee-related ADA claim. In his amended

3

complaint, now, plaintiff includes allegations about his "intermittent" knee condition but a reading of plaintiff's amended complaint in its entirety reflects that those allegations are related to his retaliation claim and are not intended to assert a separate claim under the ADA. For example, plaintiff alleges that defendant, in retaliation for plaintiff's utilizing the corporate fraud hotline to report alleged wrongdoing, refused to permit him to rest between projects (which, in turn, would have permitted him to rest his knees) despite the fact that other employees were routinely permitted to rest between projects. He further alleges that defendant reassigned him to a job position that he could perform while seated (enabling him to relieve his knees) but that defendant, again in retaliation for plaintiff's utilization of the corporate fraud hotline, denied him proper training with respect to the position such that he was removed from the position and forced to go back to a position requiring continual "wear and tear" on his knees.

Other allegations in the amended complaint further convince the court that plaintiff is not asserting an ADA claim based on his purported knee condition. In that regard, plaintiff has demonstrated an understanding of the pleading requirements concerning an ADA claim–there are multiple instances in the amended complaint where plaintiff specifically alleges that defendant did not "accommodate" his dyslexia despite plaintiff's request for assistance. The allegations concerning plaintiff's knee condition, as described by way of example above, are not drafted in similar terms. The court also finds it somewhat significant that plaintiff, in the jointly filed Report of Parties' Planning Conference, submitted a case summary that makes no mention of an ADA claim based on plaintiff's purported knee condition. Indeed, plaintiff's case is summarized, in its entirety, as follows:

> Plaintiff Bradley D. Wolfe contends Ford discriminated against him because of his purported disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and retaliated against him because he called Ford's corporate fraud hotline. Plaintiff contends that Ford took advantage of his dyslexia by not communicating, interpreting and explaining certain forms. Plaintiff contends that he has been damaged by Ford's actions.

Although this document was filed prior to the filing of plaintiff's amended complaint, the court still believes it reflects an intent to assert an ADA claim based only on plaintiff's dyslexia and not based upon plaintiff's knee condition–a reading that is consistent with the subsequently filed amended complaint. Finally, in response to defendant's motion to dismiss plaintiff's amended complaint, plaintiff does not challenge defendant's construction of his amended complaint and does not mention his knee condition in any respect. At the very least, then, any knee-related ADA claim that could be construed in the amended complaint has been abandoned by plaintiff at this juncture. *Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (plaintiffs abandoned claims "as evidenced by their failure to seriously address them in their briefs"). Defendant's motion to dismiss this claim is granted.

*Claim Stemming from Call to Corporate Fraud Hotline*

In his initial complaint, plaintiff alleged a state law whistleblower claim stemming from his alleged phone call to defendant's corporate fraud hotline to report that the facility's human resources manager was manipulating the facility's payroll in violation of company policy. The court granted defendant's motion to dismiss the claim on the grounds that plaintiff had not identified, as required by Kansas law, any material change to his employment status as a result

of his alleged whistleblower activity. The court, however, permitted plaintiff an opportunity to amend his complaint to allege the requisite material change in his employment status and a connection between a material change in his employment status and his whistleblower activity.

In his amended complaint, plaintiff has abandoned his state law whistleblower claim entirely and now asserts a claim for retaliation under Title VII based on his "protected" activity of utilizing the corporate fraud hotline to report that the human resources manager had "manipulated employees' time-keeping" records.[2] Defendant now moves to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiff's utilization of the corporate fraud hotline to report timekeeping violations is not "protected" for purposes of a Title VII claim. The court agrees and, because plaintiff's complaint contains no allegations of other activity that would be protected by Title VII, grants defendant's motion to dismiss plaintiff's retaliation claim. *See Anderson v. Academy Sch. Dist. 20*, 2004 WL 2757938, at *3 (10th Cir. Dec. 3, 2004) (filing of grievance was not protected activity for purposes of Title VII retaliation claim where subject of grievance failed to include allegation of mistreatment motivated by any category protected by Title VII; thus, even if supervisor retaliated against plaintiff for filing grievance, that retaliation was not unlawful under Title VII); *Washington v. American Stores Co.*, 2000 WL 1234310, at *1 (7th Cir. Aug. 30, 2000) (plaintiff's NLRB appeal could not form the basis for her retaliation claim under Title VII as Title VII protects from retaliation only those

---

[2]While the specific nature of plaintiff's complaint is not clear, he states in his opposition to the motion to dismiss that he called the corporate fraud hotline to report that a manager was "defraud[ing] Kansas unemployment to get their numbers."

6

complaints of unlawful employment practices that are proscribed by Title VII).[3]

*Intentional Infliction of Emotional Distress*

Finally, plaintiff asserts in his amended complaint a state law claim of intentional infliction of emotional distress. Plaintiff's allegations of "severe and outrageous" conduct include defendant's labeling plaintiff as a chronic absentee employee; revealing to his coworkers that he suffers from dyslexia; denying him training opportunities; refusing to accommodate his chronic knee pain and dyslexia; and denying him FMLA leave. Defendant moves to dismiss this claim under Rule 12(b)(6) on the grounds that the facts alleged by plaintiff simply do not meet the high threshold necessary to recover for the common law tort of intentional infliction of emotional distress under Kansas law. As will be explained, the court agrees.

Liability for the tort of intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1304-05 (D. Kan. 2009) (quoting *Restatement (Second) of Torts* § 46(1) cmt. d). Without exception, the conduct alleged by plaintiff does not meet this standard, even if that conduct might have

---

[3]It is unclear from plaintiff's amended complaint whether he intends to assert his retaliation claim under the Kansas Act Against Discrimination, K.S.A. § 44-1001 et seq., as well as under Title VII. To the extent the claim is also asserted under the KAAD, that claim is dismissed for the same reason as his Title VII claim is dismissed. *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1166 n.7 (10th Cir. 2007) (holding under Title VII applies to KAAD claims).

embarrassed or angered plaintiff and even if defendant intended to inflict emotional distress. *See id.* Indeed, as numerous courts have recognized (using the same standard utilized by Kansas courts) "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005); *see Durand v. City of Phoenix*, 2008 WL 828853, at *1 (9th Cir. Mar. 25, 2008); *Hughes Training Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001) (in the employment context, extreme conduct "exists only in the most unusual of circumstances"); *Wilson v. Southern Nat'l Bank of North Carolina*, 1996 WL 445088, at *5 (4th Cir. Aug. 8, 1996); *Bunker of City of Olathe*, 2001 WL 230364, at *4 (D. Kan. Feb. 21, 2001). Defendant's motion to dismiss is granted with respect to this claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss plaintiff's amended complaint (doc. 24) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 9th day of June, 2010, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
